No. 87-143

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

--------

LAWRENCE SCHNEIDER,

        Plaintiff and Appellant,

-vs-

C. W. LEAPHART, JR.,

        Defendant and Respondent.

--------

APPEAL FROM:  District Court of the Twelfth Judicial District,
In and for the County of Chouteau,
The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ralph T. Randono, Great Falls, Montana

    For Respondent:

        Ugrin, Alexander, Zadick & Slovak; Gary M. Zadick,
Great Falls, Montana

--------

Submitted on Briefs:  July 23, 1987

Decided:  October 6, 1987

Filed:  OCT 6 - 1987

_____
Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

Plaintiff appeals from the order of the Ninth Judicial District in and for Chouteau County, Montana, granting defendant's motion for summary judgment. We affirm.

C.W. Leaphart is an attorney residing in Helena. In 1979, Dr. Lawrence Schneider, a Helena dentist, and his wife, Lynne Schneider, approached Leaphart and asked that he represent them in a joint petition for dissolution. Leaphart agreed to the representation and recommended that the Schneiders work out a suitable property settlement on their own.

Dr. Schneider's accountant recommended that he frame part of the property settlement as maintenance for tax purposes. Dr. Schneider gathered from his discussions with the accountant and Leaphart that the maintenance payments must extend over a period of ten years to be tax deductible. Consequently, Dr. Schneider directed Leaphart to include a provision in the property settlement whereby Lynne Schneider would receive $1,000 a month in maintenance for ten years and a month. Leaphart advised Dr. Schneider that he could subsequently modify the property settlement agreement, but that any such modification should be in writing.

Dr. Schneider then entered into discussions with Lynne concerning a side agreement to terminate the maintenance payments after twenty-six months. Dr. Schneider drafted an agreement to limit maintenance to twenty-six months and told Lynne that "it's not important to me whether you really sign this or not, just so you understand and agree with me as to the terms of the agreement we made." Lynne Schneider refused to sign the side agreement.

The Schneiders agreed on the terms of the property settlement as drafted by Leaphart. The dissolution decree and property settlement agreement were entered in the District Court of Lewis and Clark County on November 3, 1979. In January of 1981, Dr. Schneider again attempted to obtain a side agreement from Lynne to limit maintenance payments to twenty-six months. Lynne again refused to sign such an agreement. In July of 1981, after making twenty-two $1,000 maintenance payments, Dr. Schneider offered to pay in advance what he believed to be the remaining four payments on the condition that Lynne give him a release. Lynne did not respond to this offer.

Approximately three months later, Dr. Schneider solicited the opinion of an accountant as to the necessity of the ten year maintenance provision in the property settlement agreement. On December 4, 1981, Dr. Schneider received The accountant's opinion that the ten year provision was unnecessary and that maintenance payments were properly deductible based on a twenty-six month term. That same day, Dr. Schneider had Leaphart send the twenty-sixth monthly maintenance payment to Lynne. Leaphart typed on the check that this payment was "the final payment due you per the understanding of [the date of the side agreement]." On December 15, 1981, Dr. Schneider again sent Lynne a release for her signature. Lynne again ignored his correspondence. Dr. Schneider made no further maintenance payments as required by the property settlement.

Lynne's refusal to cooperate prompted Dr. Schneider to suggest to Leaphart that litigation be instituted to resolve the matter. However, Dr. Schneider did not believe that Lynne would seek to enforce the maintenance provisions of the property settlement. Leaphart counseled Dr. Schneider not to sue Lynne because it appeared that Lynne would not demand the

3

remaining maintenance payments. At Dr. Schneider's request, Leaphart provided an affidavit attesting to Lynne's having agreed orally to the twenty-six month side agreement.

In January of 1984, Dr. Schneider attempted to sell two pieces of rental property located in Helena and jointly owned by Dr. Schneider and his dental partners. The title reports on the properties characterized the maintenance (as ordered in the decree of dissolution) as a lien. Lynne agreed to quitclaim her interest in one of the properties because the buyer was a friend. She refused to give the buyer of the second property a quitclaim deed.

Dr. Schneider met with Lynne on three occasions during the spring of 1984 in an attempt to obtain a release. Lynne responded by filing suit in the District Court of Lewis and Clark County to enforce the maintenance provisions of the property settlement agreement. The Lewis and Clark County District Court found that no side agreement existed and ordered that the parties be held to the terms of the original property settlement agreement. The case settled with Lynne receiving approximately $50,000 in property and cash.

Dr. Schneider filed this action for professional malpractice in Chouteau County District Court against Leaphart on March 27, 1985, more than three years and three months after the accountant's opinion. Dr. Schneider alleged that Leaphart negligently drafted the property settlement agreement to include an unnecessary provision for maintenance. Leaphart answered and alleged, among other defenses, that Dr. Schneider's claims were barred by the statute of limitations.

Dr. Schneider was deposed on July 18, 1985. On October 22, 1985, Leaphart moved for summary judgment on the grounds that Dr. Schneider failed to file the action within the applicable statute of limitations for attorney malpractice as

4

set forth in § 27-2-206, MCA. The District Court granted Leaphart's motion and Dr. Schneider appeals raising the following issues:

(1) Was Dr. Schneider aware, as a matter of law, of all facts essential to his cause of action, before the start of the limitations period?

(2) Was the limitations period tolled by the doctrine of "continuous representation?"

(3) Should Leaphart be estopped to raise the statute of limitations in this action?

The statute of limitations for attorney malpractice, § 27-2-206, MCA, provides as follows:

> An action against an attorney licensed to practice law in Montana or a para-legal assistant or legal intern employed by an attorney based upon the person's alleged professional negligent act or for error or omission in the person's practice <u>must be commenced within three years after the plaintiff discovers or through the use of reasonable diligence should have discovered the act, error or omission, whichever comes last,</u> but in no case may the action be commenced after ten years from the date of the act, error, or omission. (Emphasis added.)

The District Court found no genuine issue of material fact and granted summary judgment to Leaphart as a matter of law on the grounds that Dr. Schneider had not filed this action within the three-year statute of limitations. Dr. Schneider's burden on appeal is to establish that a genuine issue of material fact exists. Pretty On Top v. Hardin (1979), 182 Mont. 311, 315, 597 P.2d 58, 60.

Dr. Schneider first argues that the District Court erred in concluding that he had "discovered" Leaphart's negligent act more than three years before the filing of this action. As his first issue implies, Dr. Schneider asserts

5

that he must discover all elements of a cause of action, including his damages, before the statute of limitations accrues. Dr. Schneider contends that he did not discover his damages until he learned that the maintenance order was a lien on his property in February of 1984. The date of "discovery," he argues, is a genuine issue of material fact and it was improper for the District Court to enter summary judgment.

Dr. Schneider urges this Court to adopt a new rule whereby the statute of limitations in a legal malpractice action would not run until the plaintiff discovers his actual and determinable damages. This relatively new rule, otherwise know as the "damage rule," has been recognized in several states. See, R. Mallen & V. Levit, Legal Malpractice, § 390 (2d ed. 1981). However, Dr. Schneider's "damage rule" argument fails for two reasons.

Initially, the Montana legal malpractice statute of limitations, § 27-2-206, MCA, only allows the tolling of the statute of limitations until such time as the attorney's negligent act is discovered or through the use of reasonable diligence should have been discovered. Burgett v. Flaherty (Mont. 1983), 663 P.2d 332, 334, 40 St.Rep. 748, 751. There is no statutory requirement that the legal malpractice statute of limitations be tolled until a party discovers his or her damages. Section 27-2-206, MCA.

Even if Montana recognized the "damage rule," which it does not, Dr. Schneider's argument fails because he knew or should have known the extent of his damages well within the three year statute of limitations. The decree of dissolution (including the maintenance provision) in this matter became an enforceable judgment upon entry by the Clerk of the District Court. Rule 54(a), M.R.Civ.P. At the time it was docketed, the maintenance provision in the decree of

dissolution became a lien upon all of Dr. Schneider's real property in Lewis and Clark County. Section 25-9-301(2), MCA; Gaines v. Van Demark (1937), 106 Mont. 1, 74 P.2d 454. Consequently, Dr. Schneider is charged with at least constructive knowledge of the liens against his real property as of the date the decree was entered in District Court; November 3, 1979.

Dr. Schneider received the accountant's opinion and became aware of Leaphart's alleged negligence on December 4, 1981. He was aware at that time that the maintenance provision required monthly payments of $1,000 for ten years and a month. Dr. Schneider also repeatedly attempted to get Lynne to reduce his maintenance obligations. Given these circumstances, the District Court was correct in concluding that no genuine issue of material fact existed as to when Dr. Schneider discovered Leaphart's alleged negligent act.

As to the second issue in this appeal, the material facts are not in dispute. Accordingly, Dr. Schneider's second issue presents this Court with a question of law. We are then free to review the District Court's legal analysis and draw our own conclusions. Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 423, 584 P.2d 1298, 1300. Our analysis leads us to agree with the District Court.

Dr. Schneider urges this Court to adopt the doctrine of "continuous representation" in the context of legal malpractice actions. His argument is that the three year legal malpractice statute of limitations must be tolled until such time as an attorney ceases to represent a plaintiff. The District Court found that, as a matter of law, Montana does not recognize the doctrine of continuous representation in legal malpractice actions.

Dr. Schneider is correct in pointing out that this Court has not directly addressed this issue in the past.

7

However, this Court has noted that "[s]ection 27-2-206, MCA does not suspend accrual until the 'attorney-client' relationship has been terminated." Burgett, 663 P.2d at 334, 40 St.Rep. at 751. Some states, like California, have seen fit to codify the "continuous representation" doctrine into their legal malpractice statutes of limitations. Compare Cal.Code Civ.Proc. § 304.6(a)(2). The doctrine of continuous representation is absent from the Montana legal malpractice statute and we decline to judicially adopt such a provision. Accordingly, the District Court was correct in refusing to apply the doctrine of continuous representation to toll the statue of limitations in this matter.

In his final issue, Dr. Schneider argues that Leaphart should be estopped from pleading the statute of limitations. Dr. Schneider contends that Leaphart's advice not to sue Lynne Schneider prevented him from discovering his damages and for this reason alone Leaphart should be estopped from claiming that the statute of limitations had run. Regardless of what Dr. Schneider knew or did not know about his damages, we again emphasize that he needed only to discover Leaphart's alleged negligent act for the statute of limitations to commence.

The District Court applied the elements of estoppel to the facts and ruled in Leaphart's favor. See Keneco v. Cantrell (1977), 174 Mont. 130, 136, 568 P.2d 1225, 1228. However, the District Court need not have addressed the elements of estoppel because concealment of damages, as argued by Dr. Schneider, is not material to an estoppel argument under the specific circumstances of this case.

For a viable estoppel argument, Dr. Schneider must first present evidence that "conduct, act, language or silence amounting to a representation or a concealment of material facts . . . " by Leaphart prevented discovery of

8

Leaphart's alleged negligent act.  <u>Keneco</u>, supra.  Dr. Schneider fails to address this point and we are under no duty to anticipate his argument to establish the existence of a genuine issue of material fact.  Larry C. Iverson, Inc. v. Bouma (1981), 195 Mont. 351, 374, 639 P.2d 47, 59.

The first issue in this appeal is dispositive of the last issue.  Dr. Schneider became aware of Leaphart's alleged negligence no later than the date he received the accountant's opinion.  His knowledge of the alleged faulty maintenance provision, as drafted by Leaphart, was sufficient to begin the running of the three-year statute of limitations.  Accordingly, no genuine issues of material fact exist as to when Dr. Schneider discovered Leaphart's alleged negligent act.  We hold that the three-year statute of limitations, as set forth in § 27-2-206, MCA, had run and summary judgment was proper under the particular facts of this case.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices